IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| JONATHAN D. KIRWAN | ) | |
| and REBECCA A. BEACH, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 120038N |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's conference decision dated October 18, 2011, for the 2008

tax year. Trial was held in this matter in the Tax Courtroom in Salem, Oregon on May 23, 2012.

Jonathan D. Kirwan (Kirwan) appeared and testified on behalf of Plaintiffs. Sandi Lyon (Lyon)

appeared on behalf of Defendant, but did not testify. Plaintiffs' Exhibits 1 through 9 were

offered and received without objection. Defendant did not provide any exhibits.

## I. STATEMENT OF FACTS

For the 2008 tax year, Defendant adjusted Plaintiffs' income tax return for "unreported

wages" because Plaintiffs "received funds from two state agencies for providing at home care for

[their] disabled adult daughter." (Ptfs' Compl at 2.) Defendant determined that, in 2008,

Plaintiffs were "not operating a trade or business" and were "deemed [] employee[s]." (*Id.*)

Defendant determined that, for the 2008 tax year, Plaintiffs had "no schedule C activity, [so] the

schedule A was adjusted to include mortgage interest and property tax claimed for business use

of the home. A refund of $795 plus interest was mailed to [P]laintiffs, leaving a difference of

$337 that was not refunded to Plaintiffs." (Def's Answer at 1.)

/ / /

At trial, the parties agreed that the amounts of income and expenses are not in dispute. The parties also agree that the question of whether Plaintiffs are "statutory employees" discussed in the pleadings is not relevant; the sole issue is whether Plaintiffs were independent contractors rather than employees in 2008. Defendant agrees with Plaintiffs that the multi-factor test (described by Kirwan as the "common law" test) is the appropriate analysis under the law. Defendant noted that the "employers" considered Plaintiffs to be "employees" and reported their 2008 wages on W-2s. Defendant further noted that the "employers" provided some benefits.

Kirwan testified that, in 2008, Plaintiffs were guardians for their adult, disabled daughter, who suffers from both severe autism and grand mal seizures, as well as for their adult son. He testified that they provided in-home care for their adult children and received payment pursuant to state and county contracts. Kirwan's testimony focused primarily on Plaintiffs' contract with United Cerebral Palsy ("UCP"), although they had contracts with "SDRI" [Self Determination Resources Inc.] and other "brokerages" that were not identified at trial. Kirwan could not recall other sources of payment in 2008 and testified that he does not consider the source of payments to be important. He testified that Plaintiffs' contract with UCP began around November 1, 2008.

Kirwan testified that the process to become certified by the state and county was very extensive; there is reluctance to allow parents to provide in-home care for their adult children and receive payment for that care. He testified that the county conducted a search for an alternate placement for Plaintiffs' daughter and, after determining that the minimum annual contract price would be $150,000, agreed to contract with Plaintiffs to provide in-home care for their daughter. Kirwan testified that Plaintiffs' familial relationship to their daughter is irrelevant under the applicable requirements for certifying in-home adult care providers.

/ / /

Kirwan testified that Plaintiffs receive a flat fee and that they negotiated the contract price with the county, which then contracted with UCP under the expectation that UCP would hire Plaintiffs to care for their daughter. He testified that he does not receive benefits, vacation leave, or insurance. On cross-examination, Kirwan clarified that he receives health insurance from the "employer," but his wife declined that benefit.

Kirwan testified that Plaintiffs have always operated their in-home care services as a business and that Plaintiffs intend to care for persons other than their two children, although Plaintiffs did not, in fact, provide care for any others in 2008. Kirwan testified that, as of the date of trial, Plaintiffs were working on constructing a building in which to provide care to other adults with severe autism. There is no evidence that Plaintiffs were working on the new building in 2008. Kirwan testified that Plaintiffs have come to be regarded as experts in the field of providing care for persons suffering from severe autism, noting that his wife has been asked to teach classes for UCP. (*See* Ptfs' Ex 6.) Kirwan testified that Plaintiffs would need additional certification to provide care to adults other than their children. However, he testified that Plaintiffs could provide care to others for a day or for a weekend.

Kirwan testified that Plaintiffs have always had control over the manner in which they provide care for their children. He testified that Plaintiffs are subject to annual reviews of their home care environment to ensure that it meets requirements for safety and cleanliness. Kirwan testified that Plaintiffs do not receive training or instruction as to how to provide care. Kirwan testified that Plaintiffs provide their own tools and equipment, including specialized doors, windows, and a "soft bathtub" at great expense to Plaintiffs; they are not reimbursed.

Kirwan testified that Plaintiffs bear their own risk of loss; that they have the opportunity for profit and for loss; and that they intend to operate their home care service as a business that

receives profit. However, Kirwan testified that Plaintiffs' motivation was never to make money, but rather to provide the best care for their daughter. Kirwan testified that he has other sources of income, including software programming. (*See* Ptfs' Ex 9 (2012 invoice).) He testified that Plaintiffs are not prohibited from pursuing other business opportunities. Kirwan testified that Plaintiffs have the authority to hire and fire others. There is no evidence that they have done so.

## II. ANALYSIS

ORS 316.162(2)[1] defines "wages" as "remuneration for services performed by an employee for an employer, including the cash value of all remuneration paid in any medium other than cash[.]" ORS 316.162(2) identifies specific remuneration that is excluded from the definition of "wages," including "(j) [f]or services provided by an independent contractor, as defined in ORS 670.600." Plaintiffs argue that they were "independent contractors" and, therefore, did not receive "wages."[2] ORS 670.600(2) states that an "independent contractor" is "a person who provides services for remuneration and who, in the provision of the services:

"(a) Is free from direction and control over the means and manner of providing the services, subject only to the right of the person for whom the services are provided to specify the desired results;

"(b) Except as provided in subsection (4) of this section, is customarily engaged in an independently established business;

"(c) Is licensed under ORS chapter 671 or 701 if the person provides services for which a license is required under ORS chapter 671 or 701; and

/ / /

---

[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2007.

[2] Plaintiffs do not cite ORS 316.162(2), focusing instead on definitions of "wages," "employee," and "independent contractor" under federal law. (*See* Ptfs' Exs 5, 7.) However, the Oregon Supreme Court has held that Oregon law is applicable with respect to withholding and definitions of "wages" and "employer" under ORS 316.162. *See Realty Group v. Dept. of Rev.*, 299 Or 377, 380-82, 702 P2d 1075 (1985) ("The legislature did not intend to bind the Department [of Revenue] to every federal tax case and Treasury regulation, but only to those which construe statutes that Oregon had either formally adopted or substantially copied. That is not the case here.") Furthermore, ORS 316.162(2)(j) refers specifically to the definition of "independent contract" under ORS 670.600.

"(d) Is responsible for obtaining other licenses or certificates necessary to provide the services."

"The statutory criteria are conjunctive; a person is not considered an 'independent contractor' unless each is met." *Avanti Press, Inc. v. Employment Dept. Tax Section*, 248 Or App 450, 456, 274 P3d 190 (2012); *see also Preble v. Dept. of Rev.*, 331 Or 320, 324-25, 14 P3d 613 (2000) (use of the word "and" to connect three statutory requirements "indicates that they are not alternatives"). Plaintiffs must prove each of the four requirements in ORS 670.600(2) to qualify as independent contractors.

"In interpreting a statute, the court's task is to discern the intent of the legislature." *PGE v. Bureau of Labor and Industries* (*PGE*), 317 Or 606, 610, 859 P2d 1143 (1993); ORS 174.020. Legislative intent is determined first from the text and context of the statute. *PGE*, 317 Or at 611; *State v. Gaines* (*Gaines*), 346 Or 160, 171, 206 P3d 1042 (2009). "[A]fter examining text and context," the court may consider legislative history that "appears useful to the court's analysis." *Gaines*, 346 Or at 172; *see also* ORS 174.020(3). Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.* (*Reed*), 310 Or 260, 265, 798 P2d 235 (1990).

To be "independent contractors," Plaintiffs must have been "customarily engaged in an independently established business" during the 2008 tax year. ORS 670.600(2)(b).

"For purposes of (2)(b) of this section, a person is considered customarily engaged in an independently established business if any three of the following requirements are met:

"(a) The person maintains a business location:

"(A) That is separate from the business or work location of the person for whom the services are provided; or

"(B) That is in a portion of the person's residence and that portion is used primarily for the business.

"(b) The person bears the risk of loss related to the business or the provision of services as shown by factors such as:

"(A) The person enters into fixed-price contracts;

"(B) The person is required to correct defective work;

"(C) The person warrants the services provided; or

"(D) The person negotiates indemnification agreements or purchases liability insurance, performance bonds or errors and omissions insurance.

"(c) The person provides contracted services for two or more different persons within a 12-month period, or the person routinely engages in business advertising, solicitation or other marketing efforts reasonably calculated to obtain new contracts to provide similar services.

"(d) The person makes a significant investment in the business, through means such as:

"(A) Purchasing tools or equipment necessary to provide the services;

"(B) Paying for the premises or facilities where the services are provided; or

"(C) Paying for licenses, certificates or specialized training required to provide the services;

"(e) The person has the authority to hire other persons to provide or to assist in providing the services and has the authority to fire those persons."

ORS 670.600(3).

As discussed below, the court finds that Plaintiffs have failed to establish by a preponderance of the evidence that they had an "independently established business" in 2008.

Kirwan testified that, as of the date of trial, Plaintiffs were working on constructing a building in which to provide care to other adults. However, as of 2008, Plaintiffs provided care only for their two adult children and it does not appear to the court that Plaintiffs were "routinely engage[d] in business advertising, solicitation or other marketing efforts reasonably calculated to obtain new contracts to provide similar services." ORS 670.600(3)(c). Indeed, Kirwan testified that Plaintiffs would need additional certification to provide care to adults other than their children. Plaintiffs do not meet the requirement under ORS 670.600(3)(c).

Kirwan testified that Plaintiffs have the authority to hire and fire others. There is no evidence that Plaintiffs have hired other persons "to assist in providing the services" and the court is not persuaded that Plaintiffs could, in fact, hire others to help provide services in light of the strict certification requirements described by Kirwan. ORS 670.600(3)(e). Thus, Plaintiffs do not meet the requirement under ORS 670.600(3)(e).

Under ORS 670.600(3)(a), Plaintiffs must have "maintain[ed] a business location * * * that is separate from the business or work location of the person for whom the services are provided; or * * * [t]hat is in a portion of the person's residence and that portion is used primarily for the business." There is no evidence that Plaintiffs have a separate business or work location. Kirwan testified Plaintiffs provided care for their children in their residence and described various modifications that Plaintiffs have made to their home, including the doors, windows, and bathrooms. Thus, it does appear that a "portion" of Plaintiffs' residence was "used primarily for the business" as distinct from those portions of the residence used primarily for personal use by Plaintiffs. Based on the plain language of the statute, Plaintiffs do not meet the requirement of ORS 670.600(3)(a).

/ / /

Plaintiffs likely satisfy ORS 670.600(3)(d), which requires that Plaintiffs "make a significant investment in the business." Kirwan testified that Plaintiffs have incurred significant expenses to modify parts of their home so that it will be safe for their daughter. Additionally, Kirwan testified that Plaintiffs were required to obtain certification from the state and county to provide care for their adult children. That evidence supports a "significant investment."

The court received insufficient evidence whether Plaintiffs' provision of services in 2008 satisfied ORS 670.600(3)(b), which requires that Plaintiffs "bear[] the risk of loss related to the business or the provision of services * * *." The court received little evidence concerning Plaintiffs' contracts with UCP, SDRI, and other unidentified "brokerages." The court did not receive any evidence whether Plaintiffs "negotiate[d] indemnification agreements or purchase[d] liability insurance." ORS 670.600(3)(b)(D). When "the evidence is inconclusive or unpersuasive," Plaintiffs have failed to meet their burden of proof. *Reed*, 310 Or at 265.

Plaintiffs do not meet at least three of the requirements under ORS 670.600(3) for the 2008 tax year; thus, Plaintiffs were not "customarily engaged in an independently established business" under ORS 670.600(2) for the 2008 tax year. Having found that Plaintiffs were not "customarily engaged in an independently established business" for the 2008 tax year, the court need not consider the additional requirements under ORS 670.600(2). Kirwan's testimony at trial focused on current activities and plans for the future. It may well be that, subsequent to 2008, Plaintiffs have utilized the knowledge and experience gained from caring for their own children to establish a business providing care to other adults with disabilities. However, the court is not persuaded that Plaintiffs had established such a business as of the 2008 tax year.

/ / /

/ / /

### III. CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that Plaintiffs were not "independent contractors" under ORS 670.600(2) because they were not "customarily engaged in an independently established business" as described by ORS 670.600(3) for the 2008 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of August 2012.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on August 20, 2012. The Court filed and entered this document on August 20, 2012.*